UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

    TRICYCLE ENTERPRISES, INC.        CASE NO. 06-30096
                                                     (formerly 04-65901)
                            Debtor              Chapter 11
--------------------------------------------------------
APPEARANCES:

STEWART WEISMAN, ESQ.
Attorney for Debtor
Box 598
Manlius, NY 13104-0598

EDWARD Y. CROSSMORE, ESQ.
Attorney for Linda Sichel Truitt
115 West Green Street
Ithaca, New York 14850

RICHARD P. RUSWICK, ESQ.
Attorney for John Roscoe
401 East State Street, Suite 306
Ithaca, New York 14850

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

       Currently under consideration by the Court is a motion filed on November 3, 2006, on behalf of Tricycle Enterprises, Inc. ("Debtor"), objecting to the proof of claim filed by John Roscoe ("Roscoe") on May 27, 2005, in the amount of $151,176.79 and alleged to be secured (Claim No. 4-1). Opposition to the motion was filed by Roscoe on November 30, 2006, which included what was identified by him as an "amended" proof of claim (Claim No. 4-2). On December 3, 2006, the Debtor filed a Supplemental Declaration in further support of its motion,

and on December 4, 2006, the Debtor filed the affidavit of Edward Y. Crossmore ("Crossmore Affidavit") in reply to Roscoe's opposition.

The motion was originally scheduled to be heard on December 5, 2006. The hearing was adjourned, however, to the Court's motion term in Syracuse, New York, on January 9, 2007. Following oral argument by the parties, the matter was submitted for decision. However, by letter, dated January 11, 2007, Debtor's counsel requested the opportunity to submit exhibits from a trial in New York State Supreme Court, County of Tompkins ("State Court Action"). The Court responded by letter, dated January 25, 2007, requesting that Debtor's counsel identify the specific exhibits he wished to present to the Court and provide an explanation as to their relevancy. Debtor's counsel responded by letter, dated March 2, 2007, to which Roscoe's attorney, Richard P. Ruswick, Esq. ("Ruswick") responded by letter, dated March 19, 2007. Ruswick indicated that he had no objection to the Court's consideration of the exhibits, as identified by Crossmore. He requested that he be allowed to submit additional evidence, including "relevant portions of Mr. Roscoe's testimony at that trial."

On March 28, 2007, Roscoe provided the Court with copies of various exhibits admitted in the State Court Action. On April 2, 2007, the Court requested that if the parties wished to present portions of Roscoe's testimony in the State Court Action, that they do so by April 18, 2007. On April 11, 2007, Ruswick filed with the Court portions of Roscoe's testimony (Docket No. 183). By letter, dated April 17, 2007, Crossmore indicated that he had no additional material to submit to the Court. Accordingly, the Court will consider the matter submitted for decision as of April 17, 2007.

3

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), (b)(2)(A), (B) and (O).

## FACTS

The Debtor was founded in 1996 as an architectural woodworking company. Linda Sichel Truitt ("Sichel"), who was married to Roscoe at the time the company was formed, was the sole officer and shareholder of the Debtor. Roscoe served as the general manager of the Debtor. In August 1998 the two separated and were divorced in May of 2003. They continued to operate the Debtor until March of 2001 when Roscoe formed another architectural woodworking corporation, Cayuga Millwork, Inc., of which he was the sole shareholder and officer.

In 2002, Sichel commenced the State Court Action against Roscoe, the Debtor and Cayuga Millwork, Inc., requesting

> (1) a judgment determining the assets of Cayuga Millwork, Inc., tangible and intangible, whether acquired from the Debtor or elsewhere, are constructively the Debtor's assets; (2) a judgment determining that Roscoe violated his fiduciary duties to the Debtor's creditors and shareholders; (3) an interlocutory decree requiring Roscoe to file an accounting of the financial activities of the Debtor for the years 1998, 1999, 2000 and 2001; (4) the appointment of a referee to hold such proceedings as may be necessary to determine exceptions to the items of Roscoe's accounting, and (5) upon the application to confirm the report of the referee that the court also determine Roscoe's liability for punitive damages and issue an appropriate judgment against Roscoe on the accounting and for punitive damages.

*In re Tricycle Enterprises, Inc.*, Case No. 04-65901, slip op. at 7-8 (Bankr. N.D.N.Y. March 29,

4

2006).

In the State Court Action, the Hon. Walter J. Relihan, Jr., Justice of the New York State Supreme Court, heard testimony from Sichel to the effect that Roscoe, in the name of the Debtor, had obtained a loan of $100,000 from BSB Bank & Trust Company ("BSB") for "working capital."[1] *See* Decision of Justice Relihan, dated September 8, 2006, at 2. According to the Line of Credit Note and Agreement, dated August 12, 1999, attached to Roscoe's proof of claim, the loan was to mature on August 12, 2000. The Note was secured by all accounts, inventory, equipment and general intangibles, now owned or later acquired, of the Debtor.

On February 9, 2001, Roscoe applied for credit from CIT Group Equipment Financing, misrepresenting himself to be the president of the Debtor. *Id.* at 4. According to Justice Relihan, "[i]t is not clear that this application was pursued but it demonstrates, nevertheless, his interest in controlling the corporation and his willingness to misrepresent facts in relation to important business transactions." *Id.*

On February 13, 2001, Roscoe submitted an application, again misrepresenting himself to be the Debtor's president, to Alternatives Federal Credit Union ("Alternatives") for a loan of $100,000 on behalf of the Debtor, to be secured by its accounts receivable. *Id.* at 4, 7. There was testimony in the State Court Action that the proceeds were intended to be used to pay off the loan from BSB, which was in default. *Id.* at 4; *see also* Letter, dated April 23, 2001 from Patrick J. Woods, Director of Business Services, Alternatives, and signed/acknowledged by Roscoe, as president of Cayuga Millwork, Inc., the "Borrower," and individually as "Guarantor." On March

---

[1] The Line of Credit Note and Agreement, however, appears to have been signed by Sichel, as president of the Debtor, on August 18, 1999.

14, 2001, Roscoe advised Alternatives that Cayuga Millwork, Inc. had purchased the assets of the Debtor. *See* Decision of Justice Relihan at 5. Justice Relihan observed that the loan from Alternatives ultimately was made to Cayuga Millwork,[2] not to the Debtor. *Id.* at 7 and Collateral Note and Security Agreement, dated May 2, 2001, as well as trial testimony of Roscoe at 115, Lines 22-24. However, the Line of Credit Note and Agreement, dated August 12, 1999, was actually assigned by BSB to Roscoe, individually, in consideration of $100,000 paid by Roscoe ("Assignment"). *See* Decision of Justice Relihan at 6 and attachment to Roscoe's proof of claim, as well as trial testimony of Roscoe at 116, Lines 7-9.

On September 30, 2006, Justice Relihan entered a judgment in which he concluded that Roscoe violated his fiduciary duty to the Debtor as a "control person." Of relevance to the matter herein, he found that Roscoe had violated his fiduciary duty "when in and about March 2001 he transferred [the Debtor's] assets to Cayuga Millwork, Inc., and as a result thereof, Tricycle Enterprises, Inc. . . . does recover of John N. Roscoe . . . the sum of $126,453.00 together with interest from April 1, 2001 of $62,017.02, amounting in all to $188,470.02." Judgment, dated September 30, 2006. He ordered that a constructive trust be imposed on the assets of Cayuga Millwork, Inc. for the benefit of the Debtor in that amount. Justice Relihan also found that Roscoe breached his fiduciary duty to the Debtor "when on May 2, 2001, he took an Assignment of a Line of Credit Note and Agreement, Commercial Security Agreement and Business Loan Agreement from BSB Bank and Trust Company and as a result thereof said Assignment is hereby nullified and made void." *Id.* Justice Relihan also dismissed "Count II and Count III of the

---

[2] The check from Alternatives, dated May 2, 2001, in the amount of $100,000 was actually made payable to Cayuga Millwork, Inc. <u>and</u> BSB.

6

Counterclaim and Cross-Claim in the Answer, Affirmative Defenses, Amended Counterclaims and Amended Cross-Claim of John N. Roscoe and Cayuga Millwork, Inc., dated November 26, 2002 . . . ." *Id.*

**ARGUMENTS**

Roscoe's original proof of claim in the amount of $151,176.79 is based on the Assignment by BSB of the Line of Credit Note and Agreement, as well as its security interest in the Debtor's assets, to Roscoe. Roscoe acknowledges that Justice Relihan concluded that said Assignment was void. According to Roscoe, he is appealing Justice Relihan's decision and judgment. Therefore, he requests that this Court refrain from ruling on the Debtor's objection to his proof of claim. In response, the Debtor contends that the Court should disallow the claim and if Roscoe is successful with his appeal, he would be entitled to have the Court reconsider its disallowance of the claim based on § 502(j) of the U.S. Bankruptcy Code, 11 U.S.C. §§ 101-1330 ("Code").

On November 30, 2006, Roscoe filed what he contends is an amended proof of claim ("Amended Proof of Claim" or "Claim No. 4-2") in the same amount as the original.[3] The Amended Proof of Claim indicates that the debt was incurred on August 12, 1999, the same date as indicated on the original proof of claim. It asserts a secured claim based on the same documents that were attached to the original proof of claim, namely the Line of Credit Note and Agreement executed on behalf of the Debtor and BSB. He asserts that the "alternate claim is based on the fact that as part of the transaction voided by the Decision of Justice Relihan, I used

---

[3] The bar date for filing proofs of claim was June 1, 2005.

my own assets to reduce the secured debt of the Debtor. I submit that I should have a claim to the extent that the Debtor benefitted by the infusion of my own assets to reduce the secured obligations of the Debtor." Affidavit of Roscoe, sworn to November 30, 2006 (Docket No. 151). Attached to the Amended Proof of Claim is an "explanation" by Roscoe, indicating that

> I was able to purchase the debt and its supporting documents from BSB Bank and Trust Company by virtue of a loan from Cayuga Millwork, Inc. to me in the amount of $100,000. In turn, Cayuga Millwork, Inc. received the funds to loan to me by taking out a loan from Alternatives Federal Credit Union secured by assets of Cayuga Millwork, Inc. I eventually paid off the loan from [sic] me to [sic] Cayuga Millwork, Inc. with my own assets, including approximately $30,000 which I acquired by taking out a second mortgage on my residence, and approximately $40,000 which I paid to Cayuga Millwork, Inc. from my after-tax salary from Cayuga Millwork.

Explanation of Amendment to Claim, dated November 30, 2006 and trial testimony of Roscoe at 116, Lines 19-24.

The Debtor takes issue with Roscoe's position that Claim No. 4-2 is an amendment of his original proof of claim. Debtor points out Roscoe is now asserting a claim against the Debtor "not based upon his holding of the BSB note, but rather because he repaid Cayuga Millwork. Exactly how repayment of a loan to Cayuga Millwork becomes a claim against Tricycle Enterprises is not clear." Crossmore Affidavit at ¶ 13. Debtor also contends that the explanation for the Amended Proof of Claim is inconsistent with the position Roscoe took in his affidavit of August 26, 2003, in the case of *CIT Technology Financing Services, Inc. v. Tricycle Enterprises, Inc. and Linda Sichel Truitt, Cayuga Millwork, Inc., and John a.k.a. Jack Roscoe* (Sup. Ct. Tompkins County Index No. 2003-0413), in which he allegedly stated that he took out a personal loan from Alternatives in the amount of $100,000 and used the monies to obtain the Assignment of the BSB loan.

**DISCUSSION**

Roscoe timely filed his original proof of claim on May 27, 2005, four days prior to the bar date. The claim was based on the assignment by BSB to Roscoe on May 2, 2001, of the Line of Credit Note and Agreement, dated August 12, 1999. The consideration for the Assignment was purportedly the payment of $100,000 by Roscoe. Roscoe does not dispute that Justice Relihan voided the Assignment based on his finding that Roscoe had breached his fiduciary duty to the Debtor when he obtained it. To the extent that the Assignment, as the basis for Roscoe's claim, is void, the Court concludes that it must disallow the claim, subject to Roscoe's right to seek reconsideration pursuant to Code § 502(j) in the event that he is successful with his appeal of Justice Relihan's Decision and Judgment.

However, the Court must also consider whether to allow Roscoe to amend his original proof of claim. Roscoe filed the Amended Proof of Claim on November 30, 2006, approximately 18 months after the bar date. Whether to permit "an amendment of a proof of claim rests within the sound discretion of the bankruptcy judge." *In re McLean Indus., Inc.*, 121 B.R. 704, 708 (Bankr. S.D.N.Y. 1990) The Court must first consider whether the amendment reasonably relates to a timely filed proof of claim and is supported by the same operative facts giving rise to the original proof of claim or whether it is merely a disguised attempt to file a new claim after the bar date has passed. *In re McBride*, 337 B.R. 451, 460 (Bankr. N.D.N.Y. 2000); *In re Mercer's Kwik Stop Food Stores, Inc.*, Case No. 90-02046, 1993 WL 761989, at *1 (Bankr. N.D.N.Y. July 2, 1993) (citations omitted). Only if the claimant is able to establish this first prong is the Court required "to balance the equities and determine whether allowance of the amendment would be

9

fair to all parties involved." *Id.* at *2 (citing *McLean*, 121 B.R. at 708).

With respect to the first prong, the Court is to focus on whether the amendment asserts a claim that arose out of the same transaction that served as a basis for the original proof of claim and whether the original proof of claim provided "fair notice of the conduct, transaction or occurrence that forms the basis of the claim asserted in the amendment." *In re Marineland Ocean Resorts, Inc.*, 242 B.R. 748, 754 (Bankr. M.D. Fla. 1999) (citations omitted); *see also In re Matthews*, 313 B.R. 489, 493-94 (Bankr. M.D. Fla. 2004) (noting that "an amendment filed after the bar date is permitted only where the original claim provided notice to the court of the existence, nature and amount of the claim and that it was the creditor's intent, expressed in the original claim, to hold the estate liable for the claim later set forth in the amendment" (citations omitted)).

Without any documentation to support the Amended Proof of Claim, except reference to that attached to the original proof of claim, Roscoe now contends that Alternatives loaned Cayuga Millwork, Inc. $100,000. In turn he maintains that Cayuga Millwork, Inc. loaned him the money used to pay BSB for which he, rather than Cayuga Millwork, Inc., was given the Assignment. However, Justice Relihan voided that Assignment.

By virtue of the Amended Proof of Claim, Roscoe appears to be attempting to recover from the Debtor, as a secured obligation, the monies he claims he paid to Cayuga Millwork, Inc. in satisfaction of its loan to him. While Roscoe identifies the same amount and the same transaction date on the Amended Proof of Claim, there is simply no support for the allowance of Claim 4-2 as an amendment of the original proof of claim filed by Roscoe. Based on representations made by Roscoe, the proofs of claim are not based on the same operative facts.

Rather, they involve two separate and distinct transactions, one based on the Assignment to Roscoe of the Debtor's obligations owing to BSB, which arose on August 12, 1999, the other based on the payments allegedly made by Roscoe to Cayuga Millwork, Inc. in 2001, which he contends reduced the Debtor's liabilities and for which he argues he is entitled to a setoff against the State Court judgment. The effect of the State Court's avoidance of the Assignment was to eliminate the obligation of the Debtor to Roscoe even if it arguably may have resulted in a windfall for the Debtor. There is simply no documentation that would support Roscoe's contention that the Debtor remains liable to him based on alleged payments made by Roscoe to Cayuga Millwork, Inc. It appears that the Amended Proof of Claim is simply an attempt by Roscoe to circumvent the effect of Justice Relihan's avoidance of the Assignment. Thus, this Court concludes that Roscoe has failed to satisfy the first prong of establishing that Claim 4-2 is an amendment of Claim No. 4-1. Accordingly, the Court need not address the second prong, which requires it to balance the equities.

Based on the foregoing, it is hereby

ORDERED that the Debtor's motion seeking disallowance of Claim No. 4-1 is granted; and it further

ORDERED that Claim No. 4-2, filed by Roscoe on November 30, 2006, in response to the Debtor's motion, is not an amendment of Claim No. 4-1 and, accordingly, is disallowed as untimely.

Dated at Utica, New York
this 27th day of April 2007

/s/   Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge